[No. 7491.]

## DENVER AND RIO GRANDE RAILROAD COMPANY v. FREDERIC ET AL.

1. PLEADING—*Complaint Construed.* Action against a railway company under Rev. Stat. § 2056, the complaint alleging that the train whereon deceased was being carried "was by defendant and its officers,. agents and servants so negligently, carelessly and unskill· fully operated that it collided with another train." *Held* that the charge of negligence against the company itself was mere surplusage, not impairing the effect of the allegation of negligence by the officers, agents and servants; that the word "operated," included everything contained in the expressions of the statute, and that everything neces- sary to maintain the action under the statute was .sufficiently stated. (90, 94)

. 2. DEATH—*Action For—Statute Construed.* The purpose of sec- tion 2056 of the Revised Statutes is to protect human life against the fatal consequences of negligence, unskillfulness, or criminal in- tent, on the part of any officer, agent or servant of any corporation or natural person, in operating any locomotive, car, or train of cars.

The statute is purely penal. The amount of the recovery there- under depends solely upon the degree of culpability of the defendant. The age or youth, strength or infirmity, capacity or incapacity of the deceased are without effect upon this question. (96)

And the right of recovery does not depend, in the least, upon whether, if death had not ensued the injured person could have main- tained an action for the injury. (97)

Under Rev. Stat. §§ 2057, 2058, the amount of the recovery for a wrong resulting in the death of a human being is to be determined by the prospective accumulations of the deceased, having reference to his age, occupation, habits, health, and earning capacity. 96, 97)

3. ——*Defenses to the Action—Free Pass.* In an action under Rev. Stat. §2056 that the deceased was riding upon a free pass, stipu- lating that the passenger "assumes all risks of accident and * * * the company shall not be liable, under any circumstances, whether of negligence by its agents or others" is no defense to the action. (106)

4. ——*Evidence,* as to the habits, character, age, health and earn- ing capacity of the deceased, or his contribution to his parents is inadmissible. Its admission is fatal error because it is impossible to say how far it may have affected the award of the jury. (105)

*Appeal from El Paso District Court.*—Hon. J. W. SHEAFOR, Judge.

Mr. E. N. CLARK, Mr. J. G. McMURRY, for appellant.

Mr. R. L. HOLLAND, Mr. TAYLOR R. YOUNG, Mr. WILLIS L. STRACHAN, for appellees.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The suit was filed in the District Court of El Paso County December 8th, 1909, by appellees, the parents of the deceased, against the railroad company, appellant, alleging that by its own careless, negligent and unskilful acts, and those of its officers, agents, servants and employes, in operating one of its trains, the death of Frank G. Frederic, their unmarried son twenty-seven years old, was occasioned. On the 14th of August, 1909, deceased was riding on the defendant's north bound passenger train on a free pass, and met his death through a head-on collision between that and another passenger train of the company, near Husted, Colorado. The company admits negligence as charged, but contends that the complainant and proofs fail to make out a case under the statute; and it also relies upon the following agreement in the free pass to negative liability:

> "The person accepting this free ticket assumes all risks of accidents, and expressly agrees that the company shall not be liable, under any circumstances, whether of negligence by its agents or otherwise, for any injury to the person or for any loss or damage to the property of the passenger using this ticket, who hereby agrees that the company shall not be considered as a common carrier, or liable as such.

"Not good unless signed by the person named hereon, and if presented by any other person the conductor will take up this ticket and collect fare." (signed).

The action was brought under section 2056, R. S. 1908, which reads as follows:

"Whenever any person shall die from any injury resulting from or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employe, whilst running, conducting or managing any locomotive, car or train of cars, * * * the corporation, individual or individuals in whose employ any such officer, agent, servant, employe, master, pilot, engineer or driver shall be at the time such injury is committed, * * * shall forfeit and pay for every person and passenger so injured, the sum of not exceeding five thousand dollars and not less than three thousand dollars, which may be sued for and recovered:" etc.

Upon trial, the court instructed the jury that their verdict under the pleadings and evidence should be for the plaintiffs for not less than three thousand, nor more than five thousand dollars, the award being for the larger sum. The court overruled a motion for a new trial and entered judgment on the verdict, which the company brings here for review.

The first objection is that the complaint fails to state, and the proofs to establish, a cause of action under the statute upon which plaintiffs rely. It is alleged that "said train was by defendant and its officers, agents and servants, so negligently, carelessly and unskillfully operated that it collided violently head-on with another train of the defendant company," while the language of the statute allows recovery for the death of any person resulting from the "negligence, unskillfulness or criminal intent of any officer, agent, servant or employe, whilst running, conducting or managing any locomotive, car or

train of cars," etc. The contention is that the negligence of the company, as such, is not covered by the provision, but rather that the statute applies only to officers, agents, servants or employes, and is limited solely to acts of negligence committed by such persons whilst running, conducting or managing any locomotive, car or train of cars. In particular it is urged that the statute does not apply to the negligence of a person who does not engage at any time in the actual running, conducting or managing of locomotives, cars or trains. A somewhat similar contention was made in *Whittle v. Denver & Rio Grande Railroad Co.*, 51 Colo. 382, 118 Pac. 971, a case where in a suit brought under the same provision it was sought to hold the railroad company liable for the negligence of its station agent, in failing to communicate train orders to the train crew, resulting in a head-on collision. Those facts were set out at length in the complaint, it being there contended that it was the purpose of the statute to limit its provisions to those employed in the immediate charge of the train. But this court declined to assent to that narrow construction, and reversed a judgment of dismissal, following the election of plaintiffs to stand by their complaint, to which a general demurrer had been sustained below, and remanded the case. While we do not commend the complaint under consideration as a model, still that it fairly meets the essential requirements of the section under which the action was brought cannot well be doubted. Charging negligence directly against the company, if a fault, may be regarded as surplusage, and certainly does not constitute serious or reversible error. Negligence was also charged against the officers, agents and servants of the company in operating the train. The allegation that the officers, agents and

servants of the company so carelessly, negligently and unskillfully operated the train is equivalent to charging that this was done by some one or more of them while engaged in running, conducting or managing the train, so that a case was made out under the provision in question, especially in view of the *Whittle* decision, *supra.* This is equally true even though the word ''operate'' may be said to be of broader significance than the expression ''whilst running, conducting or managing any locomotive, etc.'' The word ''operate'' would certainly include and cover everything contained in the statutory expression, even though it might include matters outside and beyond that. It is, therefore, apparent that if, in fact, the accident was due to negligence of the character contemplated by the statute, such negligence was included in the allegations of the complaint, and the objection that those allegations are too broad cannot be taken in the manner proposed. It may well be that the complaint was subject to a motion to make more specific, or to a special demurrer, but even so, it by no means follows that a cause of action such as contemplated was not stated. The answer admits negligence as charged, and as we hold that the allegations of the complaint include a cause of action under the statute, proof to show just why and precisely how the accident happened was unnecessary.

Other matters urged on this review consist largely in the alleged improper admission and rejection of testimony. First, the court admitted over objection evidence of deceased's earning capacity, habits, character, and contributions made to his father and mother during his lifetime, as a basis for establishing pecuniary loss; and second, the defendant company offered the free pass in

evidence, to prove the contract relied on to acquit it of liability, which was rejected on objection by counsel for plaintiffs.

The first proposition involves the question of the character of the section quoted, whether penal or compensatory. If penal, the evidence offered as to the earning capacity of deceased and the like was improperly admitted, but if compensatory, then such evidence was competent.

We have separate statutory provisions authorizing civil actions to recover for the wrongful death of persons caused by negligence, which are essentially and diametrically different in their characters, purposes and objects: section 2056 fixes a penalty for wrongfully causing the death of another under the particular circumstances and conditions therein provided; and sections 2057-2058 give a right to recover damages as compensation for the wrongful death of a person caused by or resulting from the negligence of any person or corporation, dependent upon whether the deceased would have had a cause of action for damages if he had been injured only. These sections read as follows:

> "Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable for an action for damages notwithstanding the death of the party injured.

> "All damages accruing under the last preceding section shall be sued for and recovered by the same parties and in the same manner as provided in the first section of this act, and in every such action the

jury may give such damages as they may deem fair and just, not exceeding five thousand (5,000) dollars, with reference to the necessary injury resulting from such death, to the surviving parties, who may be entitled to sue; and also having regard to the mitigating or aggravating circumstances attending any such wrongful act, neglect or default.''

Under section 2056 the amount of recovery is placed at not more nor less than certain sums, without reference to the earning capacity of deceased or amount of damages inflicted, but depends solely upon the degree of culpability of the wrongdoer, the precise amount of which is to be fixed by the jury either at the minimum or maximum, or at some amount between these limits, under proper instructions. The fact that no matter how young or old, how infirm or useless the deceased, the recovery for his death, under this provision, is precisely the same, depending on the character of the defendant's failure of duty, as it would be had he been in the prime of life, having the highest capabilities and attainments, mentally and physically, demonstrates with unerring certainty the purpose of the legislature to make it a punitory section pure and simple. That it contains no provision for assessing damages on the basis of pecuniary loss, as in the compensatory provisions, is another evidence of its penal character; indeed, the fact that recovery may be had under it without any proof whatever of damages conclusively establishes that it is penal.

Sections 2057, 2058 are distinctively and by express terms compensatory provisions, authorizing an action for damages as compensation for the death of a person caused by the wrongful act, neglect or default of another, where such wrongful act, neglect or default is such that if death had not ensued the party injured could have maintained an action for damages. Under these sections

the amount of recovery is to be determined from the prospective accumulations of the deceased had he not been killed, having reference to his or her age, occupation, habits, bodily health and ability to earn money. Compensation as damages under these sections is based on the reasonable expectation of benefit which a plaintiff may have a right to indulge from a continuance of the life of the deceased.

The right of recovery under section 2056 does not depend in the least upon whether the injured person could have maintained an action for injuries if death had not ensued, but is an absolutely new and independent cause of action, unknown to the common law, and exists only where death results from an injury occasioned in the particular manner and form as therein prescribed. By the compensatory sections it is manifest that it was the intent and purpose of the legislature to give a cause of action only in case the person injured would have had such a right had death not ensued, provisions in effect to preserve a cause of action; indeed, such purpose is expressly stated. That the right of action under section 2056 does not depend upon whether the injured person, if death had not ensued, could have recovered for personal injury, is one of the essential characteristics which distinguishes it from the compensatory provisions, where the right exists only on the theory that the person injured would have had a cause of action had he not been killed. It was, without a doubt, the presence of sections 2057, 2058 in the act which lead this court to declare, in *A. T. & S. F. R. R. Co. v. Farrow*, 6 Colo. 546, that the purpose of the act is to keep alive a right of action which otherwise would have perished under the rule of the common law. There is no such purpose or intent, either ex-

press or implied, in section 2056. The conclusion reached on this proposition in the *Farrow* case seems to apply only to a cause of action under the compensatory provisions, and not to one under the penal section. Such conclusion in that case can be justified and upheld only upon the theory above advanced, for it is so plain that section 2056 creates a new cause of action where none at all existed before in favor of any one, to-wit, for the recovery of a penalty for the death itself, that there is no room for a difference of opinion on the subject. The following decisions so hold and are precisely in point: *Garret v. L. & N. R. Co.*, 197 Fed. 715, 117 C. C. A. 109; *Osteen v. Southern Railway*, 76 S. C. 368, 57 S. E. 196; *Beavers' Admx. v. Putnam's Curator*, 110 Va. 713, 67 S. E. 353; *Fink v. Garman*, 40 Pa. 95; *Davis v. Railway*, 53 Ark. 117, 13 S. W. 801, 7 L. R. A. 283; and *Matz v. Chicago & A. R. Co.* (C. C.) 85 Fed. 180. But if it be insisted that the decision in the *Farrow* case on the question under consideration was intended to and does apply to section 2056, then it becomes important to note that in that case there was no issue tendered which even warranted, much less required, the court to determine that precise matter, and therefore what is said in the opinion in that connection is *dicta,* and while persuasive, is neither conclusive nor controlling.

The purpose and policy of the section manifestly is to guard and protect human life against the fatal consequences of the negligence, unskillfulness or criminal intent of any officer, servant, agent or employe of any common carrier, whether a corporation or individual, while engaged in running, conducting or managing any locomotive, car or train of cars, or other public conveyance. Undoubtedly the provisions was intended to enjoin upon

such representatives the utmost skill and diligence in the discharge of their important duties as guardians of human life, and upon the carrier itself the exercise of great care and caution in their selection, to the end that better service be secured, with fewer accidents and less destruction of life. The recovery, whatever it may be in amount, is denominated a forfeiture, and the fact that it goes to the next of kin cannot be said to affect or change the character of the provision, as clearly indicated by its express terms. It would have been quite as competent for the legislature to have awarded the penalty to the public school fund, or in the nature of a fine to the general treasury of the state, as it was to authorize its recovery by those named in the statute, and had that been done there could have been no doubt of its penal character.

Similar provisions have been considered and construed by many other courts, and so far as we have been able to ascertain they have been uniformly held penal. Section 212 of Chapter 112, Public Statutes of Massachusetts 1882, reads as follows:

"If by reason of negligence or carelessness of a corporation operating a railroad or street railway, or the unfitness or gross negligence or carelessness of its servants or agents while engaged in its business, the life of a passenger or of a person being in the exercise of due diligence and not a passenger or in the employment of such corporation is lost, the corporation shall be punished by fine of not less than five hundred dollars or more than five thousand dollars, to be recovered by indictment prosecuted within one year from the time of the injury causing the death, and paid to the executor or administrator for the use of the widow and children of the deceased in equal moieties; or if there are no children to the use of the widow, or if no widow to the use of the next of kin; * * * If the corporation is a rail-

road corporation it shall also be liable in damages not exceeding five thousand dollars nor less than five hundred dollars, to be assessed with reference to the degree of culpability of the corporation or its servants or agents, and to be recovered in an action for tort commenced within one year from the injury causing the death by the executor or administrator of the deceased person for the use of the persons hereinbefore specified in a case of indictment.''

The supreme court of Vermont was the first to construe this statute, and held it penal, *Adams, Admx. v. Railroad Co.*, 67 Vt. 76, 30 Atl. 687, 48 Am. St. 800, speaking in the opinion to that point as follows:

''The plaintiff claims to recover by virtue of the provisions of a public statute of Massachusetts. The suit cannot be maintained if the statute declared upon is held to be penal. *Blain v. Curtis*, 59 Vt. 120, [7 Atl. 708, 59 Am. Rep. 702]. So far as we are informed by counsel or have been able to ascertain by examination, no construction has been placed upon this statute by the Massachusetts court. It thus becomes necessary for us to give to the statute our own interpretation. * * * A statute giving a right of recovery is often penal as to one party and remedial as to the other. It is said that in such cases the true test is whether the main purpose of the statute is the giving of compensation for an injury sustained, or the infliction of a punishment upon the wrongdoer. We think an application of this test to the provision in question shows it to be penal. The foundation of the action is the loss of a life by reason of the defendant's negligence. There was no right of action at common law. This statute gives a right of action to the personal representatives of the deceased, for the benefit of the widow and children, or widow, or next of kin. If the right of recovery is established, the damages are to be five hundred dollars in any event. Any recovery beyond this is to be assessed with reference to the degree of the defendant's culpability. * * * Here there is no ascertainment of the loss suffered, and

as far as the amount of the verdict is left to the judgment of the jury, it is to be determined by the culpability of the defendant's act, regardless of the injury resulting from it to the persons for whose benefit the suit is brought. * * * It is difficult to say that an assessment which is made to depend solely upon the degree of the party's culpability is not primarily meted out as a punishment. The sum is to be determined by the very considerations that would govern a court in fixing a fine for involuntary manslaughter. The fact that it is given to persons whom the law would have entitled to share in the estate of the deceased cannot control the construction. A statute may be penal, although the entire amount recovered be given directly to the party injured.''

Soon after the Vermont decision the Massachusetts court was called upon to consider the same section, and also held it penal, *Doyle v. Fitchbury Railroad,* 162 Mass. 66, 37 N. E. 770, 25 L. R. A. 157, 44 Am. St. 335, where this was said:

''In considering the contract on the back of the ticket, the fact that the statute is a penal one must also be borne in mind. The word 'damages' is not used in a strictly legal sense. *Sackett v. Ruder,* 152 Mass. 397, 403, [25 N. E. 736, 9 L. R. A. 391]. Damages are to be assessed not less than and not more than a certain amount, and with reference to the degree of culpability of the corporation, its servants or agents. Originally the remedy was by indictment. Afterwards it was extended to an action of tort. * * * It (amount of recovery) is in substance a penalty given to the widow and children and next of kin, instead of to the Commonwealth, and as such the intestate could not release the defendant from liability for it.''

The statute of New Mexico on this subject is substantially like the section here under consideration, except only that the amount to be recovered thereunder is fixed at a single definite sum. The question of its extra-

territorial force arose in Kansas, *Dale v. Railroad Company,* 57 Kan. 601, 47 Pac. 521, and the Supreme Court holding it to be penal, declined jurisdiction to enforce it, saying:

"Another and perhaps more serious difficulty lies in the penal character of the statute of New Mexico. Although it is argued that the law of that Territory provided for the payment by the wrongdoer of a sum of money to his widow, or minor children, and that they are the ones usually, if not invariably, most injured by his death, and that the money to be paid under the statute subserves really the same purpose as money paid under the laws of Kansas, and compensates them in some degree for the loss of the husband and father, yet it is apparent that the theory of the law of the two States is different. In Kansas it is strictly compensatory. In New Mexico it may be strictly penal; for it might happen that the person killed was a burden upon his family, contributing nothing to them."

The supreme court of Illinois refused to enforce in that jurisdiction a like statute of Missouri, because penal, *Raisor v. C. & A. R. R. Co.,* 215 Ill. 51, 74 N. E. 71, 106 Am. St. 153, 2 Ann. Cas. 802, and in that connection had this to say:

"The language of the statute (sec. 2864) is, 'shall forfeit and pay for any person or passenger so dying, the sum of $5,000.00, which may be sued for and recovered,' etc. The plaintiff is not required to prove any damage, but only that the death was occasioned by such defect, negligence or criminal intent as is mentioned in the section and averred in the declaration. * * * By the terms of the statute, and as it is administered in Missouri, whether the plaintiff has or not suffered pecuniary loss or damage is immaterial. His right to recover depends solely on the plaintiff's relation to the deceased and the culpability of the defendant, within the meaning of the statute and as averred in the declaration. From this it necessarily follows that a

plaintiff who has suffered no damage, but has been relieved, by the death, of a pecuniary burden, may recover $5,000.00. If, in any case, any part of the amount recovered may be deemed compensatory, this is merely incidental, the primary object of the statute being punitory."

In a recent case, *Young v. Railroad Company,* 227 Mo. 307, 127 S. W. 19, the Supreme Court of that state had under consideration a Missouri statute on this subject in every essential identical with the one now before us. A former statute of that state on the subject had been amended by adding the words "as a penalty," so as to make the provision read "shall forfeit and pay as a penalty for every such person, employe or passenger so dying the sum of not less than $2,000, and not exceeding $10,000, in the discretion of the jury, which may be sued for and recovered, etc." The opinion therein is the very latest expression of that court upon the nature and character of such provision, upon which point it spoke as follows:

"The words 'as a penalty' inserted by the amendment add nothing to the meaning or effect of the section. * * * If it be a case in which the damages as for compensation to the person injured be in question, the jury after assessing compensatory damages may, in a proper case, look into the character of defendant's conduct to see if punitive damages should also be awarded. In the case at bar, however, the damages are not given as compensation to the party aggrieved, but as a penalty which the law prescribes for the negligent killing of a human being; it is all penal in its character and in fixing the penalty the jury have a right to consider the conduct of the negligent party beyond the mere finding that he was negligent; they may consider whether the conduct which resulted in the catastrophe arose from mere inattention, or was wilful, wanton or reckless. That is what the jury does in assessing the punishment for a crime and it is what

the amendment of 1905 to section 2864 authorizes the jury to do in assessing the amount of the penalty under that section of the statute."

In *Marshall v. Wabash Railway Co.,* 46 Fed. 269, (C. C.) in a well considered opinion, the Federal Circuit Court for the southern district of Ohio, in a case involving the enforcement there of the Missouri statute on this subject, held the statute distinctively penal, and declined jurisdiction because statutes of that nature could be enforced only within the sovereignty of their creation.

The fact that for several years prior to the adoption of section 2056 we had on our statute books broad and comprehensive compensatory provisions, under which every conceivable action for damages resulting from the negligence of persons or corporations causing the death of a person could be maintained, is strongly confirmatory of the view that this latter section was intended to be and is penal. There was no field to be occupied by any further enactment providing for the recovery of compensatory damages, and unless section 2056 be penal it is without a function to perform or a purpose to serve.

Since we hold the statute penal, it was improper to allow plaintiffs to prove damages because of the loss of the services of and support by their son; indeed, that element is not involved in this action in the slightest, and cannot be under our construction of the provision in question. To make out a case in the first instance the plaintiffs had only to show that the defendant was a common carrier, that the negligence charged was the proximate cause of the death of their son, was of the character described in the statute, and their relationship to the deceased. Whether the plaintiffs did in fact suffer pecuniary loss or damage is wholly immaterial. The amount

of recovery depends solely on the degree of culpability of the defendant and cannot, when a cause is made out, be less than $3,000, and may go to $5,000 in the discretion of the jury, depending on the nature and quality of the wrongful act of which complaint is made.   Because of the character of the statute, and the rights of the plaintiffs and the liability of the defendant as therein defined, it is plain that the evidence showing the character, habits, health, age and earning capacity of the deceased, and the contributions by him to the support of his parents, was inadmissible.—*Fruchey v. Eagleson*, 15 Ind. App. 88, 43 N. E. 146; *Marshall v. Wabash Railway Co., supra; Philpott v. Missouri Railway Co.*, 85 Mo. 164; *Adams, Admx. v. Railroad Company, supra; Dale v. Railroad Company, supra; Raisor v. C. & A. R. R. Co., supra; Young v. Railroad Co., supra.*   While we do not say, under the facts of this case, that with that testimony omitted the jury might not have properly returned a verdict for the amount which it did return, we leave that question open, still it is plainly impossible to determine what the verdict of the jury might have been had no such testimony been before it.   It was the right of the defendant to have the finding of the jury upon the amount of the award with no testimony before it bearing on the question other than such as was competent and proper in that connection for it to consider.   It is out of the question, upon any logical, fair or reasonable theory, to hold that the admission of this testimony was not harmful.   On the contrary, it is quite reasonable to assume that, but for it, the verdict might have been less, possibly not more than the minimum amount which the statute allows.   The fact that this testimony was permitted to go to the jury for consideration in arriving at the amount of their verdict is such prejudicial error as necessitates a reversal of the judgment.

From the nature, purposes and objects of the statute, as herein declared, it is manifest that the cause of action is one in which the deceased had no interest at all, and from the liability for which he could not relieve the

company by a contract with it. It, therefore, follows that the pass, and the contract included in it, offered in evidence, was incompetent and immaterial, and was properly excluded.—*Doyle v. Fitchburg Railroad, supra; Clark v. Geer,* 86 Fed. 447, 32 C. C. A. 295; *Tingley v. Long Island Ry. Co.,* 109 App. Div. 793, 96 N. Y. Supp. 865; *C., R. I. & P. Co. v. Martin,* 59 Kan. 437, 53 Pac. 461; *Weir v. Roundtree,* 173 Fed. 776, 97 C. C. A. 500, 19 Ann. Cas. 1204; *Littlejohn v. Fitchburg R. Co.,* 148 Mass. 478, 20 N. E. 103, 2 L. R. A. 502; *Jones v. Boston, etc., Ry. Co.,* 205 Mass. 108, 90 N. E. 1152.

The judgment is reversed and the cause remanded for further proceedings in conformity with the views herein expressed.

*Reversed and remanded.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE WHITE concur.